# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| ROSA DAVIS, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 2:08-CV-59-RWS |
| | : | |
| v. | : | |
| | : | |
| GEORGIA DEPARTMENT OF | : | PRISONER CIVIL RIGHTS |
| CORRECTIONS; et al., | : | 42 U.S.C. § 1983 |
| Defendants. | : | |

## <u>ORDER AND OPINION</u>

Plaintiff, Rosa Davis, formerly incarcerated at the Lee Arrendale State Prison ("LASP") in Alto, Georgia, has submitted the instant <u>pro se</u> civil rights action against the Georgia Department of Corrections ("GDOC"), LASP Warden Tony Howerton, LASP Deputy Warden Kathy Seabolt, LASP Legal Assistant Tamara Hampton, Acting Chief Counselor Sheila Bracewell, and LASP Health Services Administrator Stephen Davis (collectively referred to as "Defendants"). This matter is presently before the Court on Defendants' motion to exceed page limit [Doc. 28] and motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. 29].

## I.  **Background**

Plaintiff's allegations in the instant complaint arise in connection with her stay at the LASP.  Plaintiff claims that her constitutional rights under the Fourth, Fifth, and Fourteenth Amendments were violated when she was forced to submit a DNA sample to prison officials.  [Doc. 1 at 3].  Plaintiff further claims that Chief Counselor Sheila Bracewell retaliated against her in violation of the First Amendment in response to Plaintiff's action in seeking to file a lawsuit in connection with the submission of a DNA sample.  [Id. at 4].  Plaintiff seeks declaratory, injunctive, and monetary relief. [Id.].

By Order entered on September 19, 2008 ("Order"), this Court conducted a 28 U.S.C. § 1915A screening of Plaintiff's constitutional claims.  [Doc. 14].  In that Order, this Court allowed Plaintiff's First, Fourth, and Fourteenth Amendment claims to proceed and dismissed her Fifth Amendment claim for failure to state a claim for relief.  [Id. at 4-9].

Defendants move this Court to exceed the twenty-five (25) page limit under Local Rule 7.1(D) with respect to the filing of their brief in support of the Rule 12(b)(6) motion to dismiss.  [Doc. 28].  Defendants request permission to file a brief no longer than thirty (30) pages in order to address the "extensive substantive and

procedural legal issues" in this case. [Id. at 2]. For good cause shown, Defendants motion to exceed the page limit [Doc. 28] is granted. On December 29, 2008, Defendants filed their pre-answer motion to dismiss pursuant to Rule 12(b)(6). [Doc. 29].

## II. <u>Motion to Dismiss Standard</u>

When considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a federal court is to accept as true "all facts set forth in the plaintiff's complaint" and is to limit "its consideration to the pleadings and exhibits attached thereto." <u>Grossman v. Nationsbank, N.A.</u>, 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted). Further, the court must draw all reasonable inferences in the light most favorable to the plaintiff. <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). Thus, a complaint may not be dismissed under Rule 12(b)(6) "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Rosen v. TRW, Inc.</u>, 979 F.2d 191, 194 (11th Cir. 1992) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).

AO 72A
(Rev.8/82)

## III. **Discussion**

Defendants move for dismissal of Plaintiff's claims on the following grounds: (1) the GDOC and the individual defendants sued in their official capacities are not "persons" within the meaning of § 1983; (2) the Eleventh Amendment bars Plaintiff's claims for damages; (3) Plaintiff's claims for damages should be dismissed because she has suffered no physical injury as required by 42 U.S.C. § 1997e(e); (4) Plaintiff has failed to state a § 1983 claim for relief under either the Fourth and Fourteenth Amendments; (5) Plaintiff has failed to state a retaliation claim against Defendant Bracewell; (6) Plaintiff cannot state a claim against any defendants for vicarious liability; (7) to the extent that Plaintiff sues any defendant in his or her individual capacity, Plaintiff's claims are barred by the doctrine of qualified immunity; and (8) Plaintiff is not entitled to injunctive relief because her claims derive from past conduct and there is no threat of future injury. [Doc. 29, Br. at 3-24].

In response, Plaintiff contends that "she has provided factual allegations to show constitutional violations of her protected rights." [Doc. 32 at 2]. Specifically, Plaintiff contends that she "does not qualify as a 'felon' and is only incarcerated with all

AO 72A
(Rev.8/82)

protection and privilege by law, and not required to submit DNA samples." [Id. at 2-3].[1]

## A.    Fourth and Fourteenth Amendment Claims

Plaintiff asserts her Fourth and Fourteenth Amendment claims against each defendant. [See Doc. 1 at 2-3]. With respect to these claims, Defendants contend, inter alia, that Plaintiff has failed to state a claim for relief. [Doc. 29, Br. at 8-14]. As discussed below, this Court agrees.

## Fourth Amendment

The Fourth Amendment protects an individual's right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. It is well settled that "'convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison.'" O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (quoting Bell v. Wolfish, 441 U.S. 520, 545 (1979)). For purposes of the

---

[1]    In her response to Defendants' motion to dismiss, Plaintiff contends that it is unnecessary to allege physical injury in order to assert an Eighth Amendment claim with regard to her placement in isolation. [Id. at 3-4]. Plaintiff, however, neither asserted an Eighth Amendment claim in her complaint nor has sought to amend her complaint by adding an Eighth Amendment claim. Accordingly, it is unnecessary to address Plaintiff's argument pertaining to an Eighth Amendment claim that has not properly been raised before this Court.

AO 72A
(Rev.8/82)

Fourth Amendment, however, prisoners "do not enjoy the same Fourth Amendment rights as free persons." Padgett v. Donald, 401 F.3d 1273, 1278 (11th Cir. 2005).

The compelled extraction of a blood or saliva sample for DNA profiling constitutes a "search" within the meaning of the Fourth Amendment. Id. at 1277 (citing Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 616-17 (1989)). In considering whether such a "search" is reasonable, the court must inquire into "all of the circumstances surrounding the search . . . and the nature of the search . . . itself." Skinner, 489 U.S. at 619 (citation omitted).

Georgia law requires convicted, incarcerated felons to provide a DNA sample to the GDOC "for analysis and storage in a data bank maintained by the Georgia Bureau of Investigation ("GBI")." Padgett, 401 F.3d at 1275 (citing O.C.G.A. § 24-4-60). In Padgett, the Eleventh Circuit Court of Appeals held that § 24-4-60 does not violate the Fourth Amendment's protection against unlawful searches and seizures. Padgett, 401 F.3d at 1280. In applying a balancing test, the Eleventh Circuit reasoned "that Georgia's legitimate interest in creating a permanent identification record of convicted felons for law enforcement purposes outweighs the minor intrusion involved in taking prisoners' saliva samples and storing their DNA profiles, given prisoners' reduced expectation of privacy in their identities." Id.

AO 72A
(Rev.8/82)

Plaintiff asserts that she is not a convicted felon for purposes of § 24-4-60 because she was sentenced pursuant to the Georgia First Offender Act ("Act"), codified at O.C.G.A. § 42-8-60 et seq. [Doc. 1 at 3; Doc. 32 at 2-3]. The Act provides in pertinent part that if a criminal defendant has not been previously convicted of a felony, he or she may plead guilty and be sentenced to a term of confinement without an adjudication of guilt. O.C.G.A. § 42-8-60(a)(2). Thus, when a person sentenced under the Act has been released from confinement, "the defendant shall be discharged without court adjudication of guilt" and will "not be considered to have a criminal conviction." O.C.G.A § 42-8-62(a).[2] However, the Act also contains the following provision:

> Notwithstanding any other provision of this article, any person who is sentenced pursuant to [O.C.G.A. § 42-8-60(a)(2)] shall be deemed to have been convicted of the offense during such term of confinement for all purposes except that records thereof shall be treated as any other records of first offenders under this article and except that such presumption shall not continue after completion of such person's confinement sentence.

O.C.G.A. § 42-8-65(c).

---

[2]"The 'underlying humanitarian purpose" of the [Act] is to protect the first offender from the stigma of having a criminal record until an adjudication of guilt has been entered with regard to the crime for which the defendant was given first offender treatment." Davis v. State, 496 S.E.2d 699, 702 (Ga. 1998).

AO 72A
(Rev.8/82)

On February 19, 2009, Plaintiff notified this Court of her new address, which does not appear to be the location of any state prison. [Doc. 34]. Even assuming that Plaintiff has completed her term of confinement in prison, a review of Plaintiff's complaint reflects that she had been serving her state sentence under the Act at the time the DNA sample was collected. [Doc. 1 at 3]. Pursuant to § 42-8-65(c), Plaintiff is deemed a convicted felon at all times during the period she served her term of confinement in prison. As an incarcerated, convicted felon, Plaintiff was therefore required to submit a DNA sample to GDOC for analysis and storage in a GBI data bank. See O.C.G.A. § 24-4-60. After reviewing § 24-4-60 and the applicable provisions in the Act, this Court concludes as a matter of law that Defendants did not violate her Fourth Amendment rights in connection with the forced taking of a DNA sample. See Padgett, 401 F.3d at 1280.

Accordingly, even after accepting as true all of Plaintiff's allegations in her complaint, her Fourth Amendment claim is subject to dismissal pursuant to Rule 12(b)(6).

### Fourteenth Amendment Claim

Liberally construed, it appears that Plaintiff's Fourteenth Amendment claim pertains to a violation of her procedural due process rights. "With any procedural due

AO 72A
(Rev.8/82)

process challenge, [a court] must first determine whether the injury claimed by the plaintiff is within the scope of the Due Process Clause." Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999) (citing Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999)). In order to establish a procedural due process violation, Plaintiff must demonstrate that the state deprived her of a constitutionally-protected liberty interest in "life, liberty, or property" without due process of law. Zinermon v. Burch, 494 U.S. 113, 125 (1990). "The fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

None of Plaintiff's allegations suggest that she has been deprived of either life or property in connection with the forced taking of a DNA sample. Rather, Plaintiff is entitled to due process only if she can establish that she was deprived of "liberty," as that term is defined in the context of the Fourteenth Amendment. The Eleventh Circuit in Kirby recognizes that:

> Determining whether one was deprived of liberty presents a unique challenge with prisoners, who are already deprived of their liberty in the ordinary understanding of the word. The Supreme Court has identified two situations in which a prisoner can be further deprived of his liberty such that due process is required. The first is when a change in the prisoner's conditions of confinement is so severe that it essentially

9

exceeds the sentence imposed by the court. The second situation is when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." In the first instance, the liberty exists apart from the state; in the second, the liberty interest is created by the state.

Kirby, 195 F.3d at 1290-91.

Plaintiff's complaint fails to present any allegations to suggest that she has been deprived of liberty due to any change in her condition of confinement. Indeed, Plaintiff has not alleged that her involuntary submission of a DNA sample in any way added to her state sentence.

With regard to the second situation discussed in Kirby, Plaintiff asserts that the Act and the GDOC Standard Operating Procedure protect her from submitting DNA samples because she is not "convicted" within the general meaning of that term. [Doc. 32 at 1-3]. However, as discussed above, Plaintiff is deemed a convicted felon under the Act while she was serving her sentence in prison. See O.C.G.A. § 42-8-65(c). In light of her status as a convicted felon, Plaintiff was required to submit a DNA sample. See O.C.G.A. § 24-4-60.

Furthermore, even if the statute or administrative policy cited by Plaintiff conferred benefits to her on this issue, she cannot establish that the submission of a

AO 72A
(Rev.8/82)

DNA sample "[i]mposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 484 (1995). See Johnson v. Ogershok, No. 4:02-CV-1525, 2004 WL 3622384 at *5 (M.D. Pa. Nov. 1, 2004) (concluding that a convicted murderer has alleged no "atypical and significant hardship" with respect to the taking of his DNA sample). Accordingly, because Plaintiff does not have a protected liberty interest with regard to the submission of a DNA sample, she is not entitled to any procedural due process protections.

Moreover, even if Plaintiff had a protected liberty interest to be free from an involuntary taking of her DNA, her procedural due process claim fails on the basis that she has an adequate post-deprivation remedy under state law. See McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994) (explaining that "only when the state refused to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise"). In Georgia, a plaintiff has the right to seek a writ of mandamus to remedy an alleged procedural violation. See O.C.G.A. § 9-6-20. The Eleventh Circuit has concluded that this mandamus remedy is adequate to ensure that a plaintiff is not deprived of her due process rights. Cotton v. Jackson, 216 F.3d 1328, 1333 (11th Cir. 2000). Because Plaintiff has an available remedy under state law, she cannot state a claim for a procedural due process violation.

11

Accordingly, even after accepting as true all of Plaintiff's allegations in her complaint, her Fourteenth Amendment claim is subject to dismissal pursuant to Rule 12(b)(6).

### Summary

Because Plaintiff's Fourth and Fourteenth Amendment claims fail to state a claim for relief, it is unnecessary to address Defendants' additional arguments presented in their motion to dismiss with respect to these claims. In granting Defendants' motion to dismiss with respect to Plaintiff's Fourth and Fourteenth Amendment claims, this Court further dismisses the following defendants from this action: the GDOC, LASP Warden Howerton, LASP Deputy Warden Seabolt, LASP Legal Assistant Hampton, and LASP Health Services Administrator Stephen Davis.

### B.   First Amendment Claim

Plaintiff claims that Chief Counselor Sheila Bracewell retaliated against her in violation of the First Amendment in response to Plaintiff's action in seeking to file a lawsuit in connection with the submission of a DNA sample. In suing Bracewell in her

individual and official capacities,[3] Plaintiff seeks punitive as well as nominal damages. [Doc. 1 at 5].

## Eleventh Amendment Immunity

Defendants contend that the Eleventh Amendment bars each of Plaintiff's claims for damages, including her retaliation claim against Bracewell in her official capacity. [See Doc. 29, Br. at 4-6]. Absent any abrogation of immunity by Congress or waiver of immunity by the state, the Eleventh Amendment bars federal courts from entertaining suits against a state or state entity. See Cory v. White, 457 U.S. 85, 90-91 (1982); Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003). It is well settled that the enactment of § 1983 does not constitute Congressional abrogation of Eleventh Amendment immunity. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989); Gamble v. Florida Dep't. Of Health & Rehab. Services, 779 F.2d 1509, 1512 (11th Cir. 1986). Furthermore, the State of Georgia has not waived its Eleventh Amendment immunity as the Georgia Constitution expressly provides that "[n]o waiver of sovereign immunity . . . shall be construed as a waiver of any immunity

---

[3] In her complaint, Plaintiff expressly states that she sues Bracewell in her official capacity. [Doc. 1 at 5]. Nevertheless, this Court liberally construes Plaintiff's complaint as suing Bracewell in her individual capacity as well in that she asks this Court for "additional, individual punitive and nominal damages." [Id.].

AO 72A
(Rev.8/82)

provided to the states or its departments, agencies, officers or employees by the United States Constitution." Ga. Const. Art 1, § 2, ¶ 9(f).

"The protection provided to states under the Eleventh Amendment is also afforded to State officials sued in their official capacities, because a suit against a government officer in his official capacity is the same as a suit against the entity that employs the officer." Moton v. Cowart, No. 8:06-CV-2163-T-30EAJ, 2008 WL 2117120 at *9 (M.D. Fla. May 19, 2008) (citing Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986)). Plaintiff's allegations reflect that Bracewell is a state official employed at the LASP. Accordingly, to the extent that Plaintiff sues Bracewell for damages in her official capacity, her retaliation claim is barred by the Eleventh Amendment.[4]

---

[4] A review of Plaintiff's complaint reflects that she does not expressly seek injunctive or declaratory relief with respect to her retaliation claim. Even if Plaintiff had sought such relief, it would be deemed moot as Plaintiff is no longer confined at the LASP. See Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988) (holding that a prisoner's claim seeking declaratory and injunctive relief in a § 1983 action becomes moot once the prisoner has been transferred).

AO 72A
(Rev.8/82)

**Section 1997e(e)**

Defendants further contend that each of Plaintiff's claim, including her retaliation claim, should be dismissed because she has suffered no physical injury. [Doc. 29, Br. at 6-8]. The Prison Litigation Reform Act ("PLRA") provides that:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).[5] In connection with her retaliation claim, Plaintiff alleges that she suffered only "physical, mental and emotional stress." [Doc. 1 at 5]. Plaintiff makes no allegation that she suffered a physical injury in connection with Bracewell's alleged retaliatory conduct.

In the absence of any allegation of physical injury, § 1997e(e) bars Plaintiff's request for punitive damages with respect to her retaliation claim. See Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007) (recognizing that § 1997e(e) precludes an

---

[5] This Court acknowledges that Plaintiff may have completed her state sentence in that her most recent address does not reflect present confinement in a prison. Nevertheless, the fact that Plaintiff may have been released from prison after filing her complaint does not excuse her from being subject to the provisions of the PLRA. See Harris v. Garner, 216 F.3d 970, 981 (11th Cir. 2000 (recognizing that "[t]he status that counts, and the only status that counts, for purposes of section 1997e(e) is whether the plaintiff was a 'prisoner confined in a jail, prison, or other correctional facility' at the time the federal civil action was 'brought,' i.e., when it was filed").

AO 72A
(Rev.8/82)

inmate's claim for compensatory and punitive damages). However, this statute does not preclude Plaintiff from seeking nominal damages as to this claim. See id. (explaining that "§ 1997e does not preclude a prisoner from seeking nominal damages if he can establish that he has suffered a constitutional injury"). Accordingly, this Court concludes that Plaintiff may pursue her retaliation claim only with respect to her request for nominal damages.

## Retaliation

This Court now turns to address Defendants' contention that Plaintiff has failed to state a retaliation claim against Bracewell. Retaliation against an inmate for filing administrative grievances or lawsuits may violate an inmate's First Amendment rights. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003); Wright v. Newsome, 795 F.2d 964, 967-968 (11th Cir. 1986). An act in retaliation for the exercise of a constitutionally-protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper. See Farrow, 320 F.3d at 1249; Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989).

To prevail on a retaliation claim, "an inmate must establish these elements: (1) [her] speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of

16

ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)). Because regulatory actions taken by prison officials are presumed to be reasonable, an inmate such as Plaintiff must set forth "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury . . . ." Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (citation omitted).

Plaintiff alleges the following facts with regard to her retaliation claim: (1) on February 11, 2008, Bracewell called Plaintiff into Bracewell's office; (2) Bracewell became angry and physically intimidated Plaintiff upon learning about the possibility of Plaintiff filing a lawsuit; (3) Bracewell threatened to pull Plaintiff from "law library detail"; and (4) two hours after complaining to prison officials about Ms. Bracewell's conduct, Bracewell initiated a false disciplinary report against Plaintiff and placed her in administrative segregation. [Doc. 1 at 4]. When viewing Plaintiff's allegations as true for the purpose of this Rule 12(b)(6) motion, Plaintiff establishes that she had been engaging in protected activity in connection with her preparation of a lawsuit, that Bracewell had knowledge of Plaintiff's pending lawsuit, and that Bracewell may have engaged in acts of retaliation shortly after learning about the lawsuit. This Court finds

AO 72A
(Rev.8/82)

that Plaintiff has alleged sufficient specific facts to state a First Amendment claim of retaliation against Bracewell.  See Blue v. Patarroyo, No. 08-22672-CIV, 2009 WL 347792 at *5 (S.D. Ga. Feb. 11, 2009) (recognizing that an inmate states a First Amendment claim of retaliation when he "alleges specifically that he engaged in protected activity by verbally complaining and stating that he was going to file a grievance and by actually filing a grievance" and that the prison official "engaged in acts of retaliation in response to those complaints"); Moton, 2008 WL 2117120 at *8 (explaining that "the temporal proximity of the discipline and harassment to the filing of the grievance raises a 'colorable suspicion' or 'plausible inference' of retaliation").

### Qualified Immunity

To the extent that Plaintiff asserts her retaliation claim against Bracewell in her individual capacity, Defendants contend that Bracewell is entitled to qualified immunity. [See Doc. 29, Br. at 19-23].  Qualified immunity protects government officials who perform discretionary functions from suits in their individual capacities, unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity "protect[s] from suit all but the plainly incompetent or one who is knowingly violating

18

the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir.2002) (internal quotation marks and citation omitted)

To be eligible for qualified immunity, the official must first establish that he was performing a "discretionary function" at the time the alleged violation of federal law occurred. Dalrymple v. Reno, 334 F.3d 991, 995 (11th Cir. 2003). In the instant case, Plaintiff's allegations indicate that Bracewell acted within the scope of her discretionary authority at all relevant times.

"Once the official has established that he was engaging in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity." Benton v. Hopkins, 190 Fed. Appx. 856, 858 (11th Cir. 2006). To demonstrate that the government official is not entitled to qualified immunity, the plaintiff must show that (1) the official's conduct violated a constitutional right; and (2) the constitutional right was clearly established at the time of the violation. Sharp v. Fisher, 532 F.3d 1180, 1183 (2008). In determining whether a right is clearly established, "the salient question . . . is whether the state of the law [at the time of the events in question] gave respondents fair warning that their alleged treatment of [the plaintiff] was unconstitutional." Hope, 536 U.S. at 741.

19

When viewing allegations as true for the purpose of this Rule 12(b)(6) motion, as discussed above, Plaintiff has stated a First Amendment claim of retaliation against Bracewell. Furthermore, given the Eleventh Circuit's decisions in <u>Bennett</u>, <u>Farrow</u>, and <u>Bennett</u>, which pre-dated the time of the events at issue in this case, this Court concludes that Bracewell had fair warning about the potential unlawfulness of her conduct as retaliatory in violation of the First Amendment. <u>See</u> <u>Moton</u>, 2008 WL 2117120 at *10. Accordingly, Bracewell is not entitled to qualified immunity at this early stage of the case.

## Summary

In view of the foregoing analysis, Defendants' motion to dismiss is granted with respect to: (1) Plaintiff's First Amendment retaliation claim against Bracewell in her official capacity; and (2) Plaintiff's request for punitive damages against Bracewell. Defendants' motion to dismiss is denied in all other respects as Plaintiff has stated a First Amendment claim of retaliation against Bracewell.

## IV.   Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendants' motion to exceed page limit [Doc. 28] is **GRANTED**.

AO 72A
(Rev.8/82)

**IT IS FURTHER ORDERED** that Defendants' Rule 12(b)(6) motion [Doc. 29]

is **GRANTED IN PART** and **DENIED IN PART**.  Specifically the motion to dismiss

is **GRANTED** as to the following matters:

(1)     Plaintiff's Fourth and Fourteenth Amendment claims are **DISMISSED** for failure to state a claim for relief.

(2)     the GDOC, LASP Warden Howerton, LASP Deputy Warden Seabolt, LASP Legal Assistant Hampton, and LASP Health Services Administrator Stephen Davis are **DISMISSED** from this action.

(3)     Plaintiff's First Amendment claim against Bracewell in her official capacity is **DISMISSED**.

(4)     Plaintiff's request for punitive damages in connection with her First Amendment claim is **DISMISSED**.

The motion to dismiss is **DENIED** in all other respects as Plaintiff has stated a First

Amendment claim seeking nominal damages against Bracewell in her individual

capacity.

**IT IS FURTHER ORDERED** that Defendant Bracewell shall file an Answer

within THIRTY (30) days of the entry date of this Order.

**IT IS FURTHER ORDERED** that this case **SHALL** proceed on a four (4)

month discovery track, beginning THIRTY (30) days after Defendant Bracewell files

her Answer to the complaint, subject to extension by motion filed prior to the expiration of the discovery period.  See LR 26.2(A)-(B), NDGa.

**IT IS SO ORDERED**, this  18th  day of June, 2009.


_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)