**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| ROSA DAVIS, | : | PRISONER CIVIL RIGHTS |
|     Plaintiff, | : | 42 U.S.C. § 1983 |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 2:08-CV-059-RWS |
| SHEILA BRACEWELL, | : | |
|     Defendant. | : | |

**ORDER AND OPINION**

The matter is presently before the Court on Defendant's motion for summary judgment with brief in support and attached exhibits [Doc. 42]. For the reasons that follow, the Court grants Defendants' motion for summary judgment.[1]

I. Background

Plaintiff filed the instant complaint claiming that her constitutional rights were violated when she was forced to submit a DNA sample to prison officials, and when she was disciplined because she indicated that she was going to file a lawsuit in connection therewith. The only issue remaining in the complaint is

---

[1] Although Plaintiff was sent a Notice to Respond to Summary Judgment Motion [Doc. 43] in February 2010, she has not filed a response. Accordingly, the Court deems Defendant's undisputed facts to be admitted. See LR 56.1B.(2)a.(2), N.D. Ga.

Plaintiff's claim that Defendant retaliated against her in violation of her First Amendment rights.

The relevant facts are as follows:

At all times relevant to the complaint, Plaintiff was incarcerated at Lee Arrendale State Prison ("LASP") and Defendant was Acting Chief Counselor at LASP. [Doc. 1; Def. Exh. B at ¶ 3]. While incarcerated at LASP, Plaintiff's DNA was extracted by LASP staff pursuant to Georgia law. [Def. Exh. A at ¶ 13; Def. Exh. B at ¶ 7; Def. Exh. C at 87-88]. Plaintiff repeatedly had expressed her opinion that it was improper for her DNA to be extracted because she had been sentenced under Georgia's First Offender statute, and several prison officials including Warden Howerton and Defendant had discussed the issue with Plaintiff on numerous occasions. [Def. Exh. A at ¶ 13; Def. Exh. B at ¶ 7].

On February 11, 2008, Warden Howerton received a special parole review form that had been completed and sent to him by Plaintiff. [Def. Exh. A. at ¶ 12]. Only the warden, however, is authorized to generate the special review form and recommend special parole review. [Id. at ¶¶ 11-12]. Because inmates are not authorized to complete the special review form, upon receipt of the form from Plaintiff, Warden Howerton contacted Defendant and asked her to speak to

2

Plaintiff about the form. [Id. at ¶ 12; Def. Exh. B at ¶ 5]. Plaintiff did not meet the criteria for special parole consideration; therefore, Warden Howerton would not have recommended her for special parole review. [Def. Exh. A at ¶ 12; Def. Exh. C at 110, 133].

Pursuant to Warden Howerton's request, Defendant called Plaintiff in her office at 11:00 a.m. on February 11, 2008, to discuss the special review form. [Def. Exh. B at ¶¶ 5-6]. While Plaintiff was in Defendant's office, Plaintiff brought up the DNA matter despite Defendant's statement that she did not wish to discuss it. [Id. at ¶¶ 7-8]. Plaintiff was argumentative and continued to yell at Defendant, refusing to obey Defendant's orders to be quiet and stop arguing with her. [Id.]. After Plaintiff left Defendant's office, Warden Howerton instructed Defendant to write a disciplinary report based on Plaintiff's insubordination in Defendant's office. [Def. Exh. A at ¶ 13; Def. Exh. B at ¶ 13]. Defendant wrote Plaintiff's disciplinary report at 11:25 a.m., charging Plaintiff with failure to follow instructions, insubordination and verbal threats. [Def. Exh. B at ¶ 15]. Defendant served the disciplinary report on Plaintiff at 1:26 p.m. [Id.].[2]

---

[2] Plaintiff later was found guilty of failure to follow Defendant's instructions after a disciplinary hearing. [Def. Exh. B at ¶ 15].

3

In compliance with Georgia Department of Corrections ("GDC") policy, the shift Officer in Charge ("OIC") sent Plaintiff to administrative segregation pending her disciplinary hearing. [Def. Exh. B, ¶ 17, Att. 2]. Because Plaintiff was sent to administrative segregation, GOP policy mandated that she lost her work detail. [Def. Exh. B at Att. 2, Att. 3]. Defendant made several efforts to obtain a new detail assignment for Plaintiff, but the necessary paperwork was delayed by Plaintiff's counselor. [Def. Exh. B at ¶ 26]. Thereafter, Plaintiff filed a grievance against Defendant alleging that Defendant denied her work detail assignments. [Def. Exh. B at ¶ 23]. In part as a result of Defendant's efforts, Plaintiff was eventually assigned a new work detail. [Def. Exh. B at ¶ 26].

II.  Discussion

    A.  Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions

4

of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. Northern Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir.1997) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts"). This Court, however, "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1011 (11th Cir. 2004); see also Trustees of Central Pension Fund of International Union of Operating Engineers and Participating Employers v. Wolf Crane Serv., Inc., 374 F.3d 1035, 1039-40 (11th Cir. 2004) (reversing district court's grant of summary judgment by default because "summary judgment cannot be granted as a sanction for merely failing to file a response to a motion for summary judgment").

6

AO 72A
(Rev.8/82)

B.     Analysis

Plaintiff's claims that Defendant filed a false disciplinary report against her because Plaintiff warned Defendant about the instant lawsuit and complained about Defendant's actions after leaving her office are not supported by the evidence. The First Amendment forbids prison officials from retaliating against prisoners for exercising the right to free speech. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). To succeed on a First Amendment retaliation claim, a plaintiff must establish that: (1) she engaged in constitutionally protected speech; (2) she suffered retaliatory conduct that would deter a person of ordinary firmness from engaging in protected speech; and (3) there is a causal connection between the protected speech and alleged retaliation; i.e., retaliatory intent. Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008).

The evidence shows that on February 11, 2008, Plaintiff was called into Defendant's office to discuss the special parole review form she had filled out and that while she was there, Plaintiff attempted to rehash the DNA extraction issue and became argumentative and began yelling. She became insubordinate by refusing to obey Defendant's direct order three times to be quiet and stop arguing. Plaintiff, therefore, cannot establish the first element of retaliation – i.e., that she

7

was engaged in constitutionally protected speech. See Smith, 532 F.3d at 1277 ("[I]f a prisoner violates a legitimate prison regulation, [s]he is not engaged in 'protected conduct' and cannot proceed beyond step one.") (citations omitted); see also Moulds v. Bullard, 345 F. App'x 387, 393 (11th Cir. 2009) (holding that plaintiff alleging retaliation could not establish that he engaged in constitutionally protected conduct because when he sent a note to another inmate in administrative segregation he violated a legitimate prison regulation prohibiting communication between inmates in segregation).

Moreover, it is clear from the undisputed evidence that the disciplinary report, placement in administrative segregation, and resulting loss of work detail occurred not because Plaintiff told Defendant about the instant lawsuit[3] or her complaints about Defendant's actions; but rather, because of Plaintiff's refusal to obey Defendant's orders. Thus, she cannot establish a causal connection between her actions and the alleged retaliation. Indeed, Defendant wrote the disciplinary report twenty-five minutes after Plaintiff left Defendant's office pursuant to Warden Howerton's instructions; Defendant was not even aware that Plaintiff

---

[3] Importantly, Plaintiff did not submit the instant complaint to prison authorities until nearly one month later on March 10, 2008, and it was not filed until March 19. [Doc. 1].

8

spoke with anyone about what happened in Defendant's office between the time Plaintiff left the office and the time she was served with the disciplinary report; Plaintiff later was found guilty of the infraction; it was the OIC's, not Defendant's decision, to place Plaintiff in administrative segregation pursuant to GOP policy; and GOP policy mandated that Plaintiff lose her work detail because she was placed in administrative segregation.  Furthermore, Plaintiff concedes that she has no knowledge of any personal reason Defendant would have to retaliate against her. [Def. Exh. C at 132].  Plaintiff, therefore, cannot demonstrate that but for Defendant's retaliatory motive, Plaintiff would not have been placed in segregation or lost her work detail.  See Mount Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977) (holding that defendant is entitled to summary judgment if he can show that he would have taken the same action in the absence of the protected activity); Smith v. Florida Dep't of Corr., No. 09-12894, 2010 WL 1377351 at *5 (11th Cir. Apr. 8, 2010) (indicating that a valid disciplinary report for failure to obey an order does not, without more, plausibly infer a retaliatory motive); Smith v. Mosley, 532 F.3d at 1278 (stating that the causal connection asks whether the defendants were subjectively motivated to discipline based on the complaints made by the plaintiff); Thaddeus-X v. Blatter, 175 F.3d 378, 399 (6th

9

Cir. 1999) ("If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment."); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (holding that a legitimate disciplinary report is probative and potent summary judgment evidence that can defeat causation in a retaliation claim).[4]

In light of the undisputed evidence submitted by Defendants, no reasonable juror could find that Defendant violated Plaintiff's First Amendment rights. Thus, Defendant is entitled to summary judgment, and the Court need not address Defendant's qualified immunity argument.

---

[4] Plaintiff also has not demonstrated any retaliation based on the grievance Plaintiff filed against Defendant, because the evidence shows that the reclassification paperwork for Plaintiff's work detail was delayed by Plaintiff's counselor and that it was Defendant's efforts that eventually resulted in Plaintiff's new work detail.

III. <u>Conclusion</u>

Based on the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [Doc. 42] is **GRANTED** and Plaintiff's complaint is **DISMISSED**.

**IT IS SO ORDERED**, this  13th  day of July, 2010.

                                            **RICHARD W. STORY**
                                            United States District Judge

AO 72A
(Rev.8/82)